**F I L E D**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT

**MAY 3 0 2001**

FOR THE DISTRICT OF NEW MEXICO

*Robert M. March*

CLERK

JAMES M. STALLINGS,

        Plaintiff,

  vs.

                                      No. CIV 99-629 LH/LFG

LARRY G. MASSANARI, Acting
Commissioner, Social Security
Administration[1]

        Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[2]

       Plaintiff James M. Stallings ("Stallings") invokes this Court's jurisdiction under 42 U.S.C.

§ 405(g) seeking judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner determined that Stallings was not eligible for supplemental

security income ("SSI"). Stallings moves this Court for an order reversing the Commissioner's

final decision and remanding for a rehearing.

       Stallings was born on November 23, 1942 and was 55 years old at the time of the

administrative hearing in this case. He is a high school graduate. His prior work experience is

---

   [1]On March 29, 2001, Larry G. Massanari became the Acting Commissioner of Social Security. In
accordance with Fed. R. Civ. P. 25(d)(1), Mr. Massanari is substituted for Kenneth S. Apfel as the
Defendant in this action.

   **[2]Within ten (10) days after a party is served with a copy of the legal analysis and
recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections
to such analysis and recommendations. A party must file any objections within the ten day
period allowed if that party wants to have appellate review of the analysis and
recommendations. If no objections are filed, no appellate review will be allowed.**



as a musician and electronics assembler.  Stallings alleges he has been unable to work since November 27, 1994.  He filed two previous applications for SSI, which were denied in 1974 and 1995.  In his third application, which is the subject of this appeal, he alleges disability due to coronary disease, hypertension and diabetes.  This application was denied initially and on reconsideration, and Stallings requested a hearing before an Administrative Law Judge ("ALJ").  The hearing was held on January 20, 1998.  The ALJ issued his opinion on March 21, 1998, finding that, in spite of his impairments, Stallings is able to return to his past work as a musician and electronics assembler and is therefore not disabled.  Stallings requested a review of this opinion, and the Appeals Council denied the request on April 23, 1999.  This appeal followed.

### Standards for Determining Disability

In determining disability, the Commissioner applies a five-step sequential evaluation process.[3] The burden rests upon the claimant throughout the first four steps of this process to prove disability, and if the claimant is successful in sustaining his burden at each step, the burden then shifts to the Commissioner at step five.  If at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[4]

Briefly, the steps are:  at step one, claimant must prove he is not currently engaged in substantial gainful activity;[5] at step two, the claimant must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . .;"[6] at step three,

---

[3]20 C.F.R. § 416.920(a)-(f) (1999); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

[4]20 C.F.R. § 416.920(a)-(f)(1999); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

[5]20 C.F.R. § 416.920(b)(1999).

[6]20 C.F.R. § 416.920(c)(1999).

the Commissioner must conclude the claimant is disabled if he proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (1999);[7] and, at step four, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[8]

If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering claimant's residual functional capacity ("RFC"),[9] age, education and past work experience, he is capable of performing other work.[10]  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove he cannot, in fact, perform that work.[11]  In the case at bar, the ALJ made his dispositive determination of non-disability at step four of the sequential evaluation.

Stallings contends that the final administrative decision is not supported by substantial evidence, that the Commissioner did not carry his burden of proof, and that the Commissioner did not apply the correct legal standards.

### Standard of Review and Allegations of Error

On appeal, the Court considers whether the Commissioner's final decision is supported by

---

[7]20 C.F.R. § 416.920(d) (1999).  If a claimant's impairment meets certain criteria, that means his impairments are "severe enough to prevent [him] from doing any gainful activity."  20 C.F.R. § 416.925 (1999).

[8]20 C.F.R. § 416.920(e) (1999).

[9]The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy.  Those categories are:  sedentary, light, medium, heavy and very heavy.  20 C.F.R. § 416.967 (1999).

[10]20 C.F.R. § 416.920(f) (1999).

[11]Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

substantial evidence, and whether the Commissioner used the correct legal standards.  <u>Glenn v.</u>

<u>Shalala</u>, 21 F.3d 983 (10th Cir. 1994).  To be substantial, evidence must be relevant and sufficient

for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere

scintilla, but it need not be a preponderance.  <u>Trimiar v. Sullivan</u>, 966 F.2d 1326, 1329 (10th Cir.

1992); <u>Muse</u>, at 789.  In <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) the Tenth

Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the
> evidence, but an ALJ is not required to discuss every piece of
> evidence.  Rather, in addition to discussing the evidence supporting
> his decision, the ALJ must also discuss the uncontroverted evidence
> he chooses not to rely upon, as well as the significantly probative
> evidence he rejects. (citations omitted).

If supported by substantial evidence, the decision of the Commissioner is conclusive and must be

affirmed.  The Court cannot reweigh the evidence or substitute its judgment for that of the

Commissioner.  <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1486 (10th Cir. 1991).

Stallings contends that the ALJ erred in the following ways:  (1) it was error to base denial

of benefits on the conclusion that Stallings could return to his past work as a musician, when the

ALJ declined to make a determination whether this work was "substantial gainful activity"; (2)

the ALJ's determination that Stallings can return to his previous work is not supported by

substantial evidence; and (3) the ALJ's credibility finding is not supported by substantial evidence.

In his briefing, the Commissioner discusses only the finding that Stallings can return to his past

work as an electronics assembler and does not address the issue of past work as a musician,

noting, "Since Claimant's work as an electronics assembler was substantial gainful activity and

substantial evidence supports the finding that Claimant can perform this work, the Commissioner

4

will not discuss Claimant's ability to perform work as a musician since there was not a clear finding as to whether or not this work constituted substantial gainful activity." [Doc. 12 at 4].

The Court agrees that the ALJ correctly found that Stallings can return to his past work as an electronics assembler and also agrees that the ALJ's credibility finding was supported by substantial evidence; therefore, the Court will recommend that Stallings' motion to reverse be denied.

### The Finding That Stallings Can Return to Past Relevant Work Is Supported by Substantial Evidence

The ALJ found that Stallings has a severe combination of impairments, including coronary artery disease, hypertension, and non-insulin dependent diabetes mellitus, none of which meets or exceeds any impairment in the Listings. The ALJ then proceeded to step four, finding that Stallings had not met his burden of showing that he is incapable of meeting the physical and mental demands of either of his past relevant jobs, musician and electronics assembler. As noted above, the Court finds that there is substantial support in the record for the ALJ's holding that Stallings can return to the work of electronics assembling and therefore finds it unnecessary to address the issue of his ability to return to work as a musician.

Stallings contends that the evidence does not support a finding that he can stand or walk at least 6 hours out of an 8 hour day which is a necessary requirement for "light" work, a category which includes electronics assembly work, and in connection with this argument challenges the ALJ's credibility finding. He further argues that because the electronics industry has changed considerably since he last worked assembling amplifiers, he cannot return to the exact same work

he did in the past.[12]

### A. Claimant's Ability to Stand/Walk for Six Out of Eight Hours as Bearing on His Capacity to Return to Past Relevant Work

The ALJ found that Stallings retained the RFC for light work, based on the fact that he can lift 20 to 25 pounds occasionally and can stand and walk for up to 6 hours in an 8-hour day, with normal breaks. "Light" work," according to Social Security regulations, involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds, and also requires "a good deal of walking and standing." 20 C.F.R. § 426.967(b). This definition has been interpreted to mean that the claimant must be able to stand or walk for at least 6 hours out of the day. Social Security Ruling 83-10, 1983 WL 31251, at *6; Carter v. Sullivan, 909 F.2d 1201, 1202 (8th Cir. 1990).

The ALJ found that Stallings' past work as an electronics assembler did not entail any functional demands beyond those outlined in the RFC, and thus that he could return to this past work and was not disabled. Stallings challenges the finding that he can walk or stand for 6 hours out of an 8-hour day, based on record evidence of his heart problems, hypertension and poorly-controlled diabetes, and his own testimony that he cannot stand on his feet for long periods of time before experiencing chest pain and sore feet.

The medical evidence supports the ALJ's finding, and the only contradictory pieces of

---

[12]There is a conflict in the evidence as to whether Stallings' last assembly work took place in the 1980s or in 1993. It appears from the record that the only supportable date for this work is 1987 or 1988. Stallings himself contends that the correct date is 1988 [Doc. 11 at 5-6]. The Court accepts 1988 as the appropriate date but finds that the analysis remains the same regardless which is the actual date, since both fall within the 15-year limitation on the definition of "past relevant work." 20 C.F.R. § 416.965(a).

6

evidence on the record are Stallings' own statements, which the ALJ did not find credible.[13]  In November 1995, Stallings was admitted to UNM Hospital, suffering from a heart attack.  On admission, it was found that his chest pain was slightly worse with a deep breath, and came on after he ate a sandwich.  (Tr. 154-55).  There was no mention during the hospitalization of chest pain increasing upon, or being caused by, physical activity such as walking or standing.  Following a balloon catheter procedure (precutaneous transluminal coronary angioplasty, or "PTCA"), his chest pain resolved, and he was discharged in good condition without the need for long-term anti-coagulation therapy.  (Id.).

In August 1996, Stallings' doctor, a heart specialist, noted that Stallings reported that he walked for at least a half-hour per day and swam three times a week without experiencing chest or shoulder pain.  (Tr. 183).  In November 1996, Stallings reported to another medical care provider  that he had had no chest pain at all since August and could walk for 15 minutes with no shortness of breath or chest pain.  (Tr. 181).  In December 1996 and June-July 1997, Stallings' doctors recommended that he increase, rather than decrease, the amount of exercise he performs.  (Tr. 175, 176, 179).  His heart doctor also noted in June 1997 that he had no angina (chest pain) upon moderate physical activity, although he experienced chest discomfort after playing music "all night."  In May 1997, he complained to a medical care provider that he was breathing heavily at times, usually after meals, but that it was not related to exercise.  (Tr. 177).  Also in July, his doctor noted that Stallings had increased his cardio rehabilitation and, although he continued to experience chest pain, it was not related to physical activity.  (Tr. 173).  RFC assessments done

---

[13]Stallings' challenge to the credibility finding is discussed in a separate section below.

in March and September 1997 evaluated Stallings' capabilities as occasional lifting of 20 pounds, frequent lifting of 10 pounds, and the ability to walk or stand for 6 hours out of 8. (Tr. 166, 197).

Stallings' statements of his ability to walk and stand contradict the medical record outlined above. He stated in an undated Pain Report that he has crushing, suffocating pain in his chest daily, lasting for about 2-3 hours, and that "any activity" causes this pain. (Tr. 91). In an undated Function Report, he wrote that he cannot stand or walk for prolonged periods (Tr. 101), and stated in an undated Disability Report that he cannot stand on his feet too long. (Tr. 104). In an April 1997 Reconsideration Disability Report, Stallings said that his legs hurt all the time, that he has chest pains once a week, and that he can walk for only about 15-20 minutes before experiencing pain. (Tr. 132, 134). In July 1997, he noted on a Chest Pain History form that he has chest pain on a daily basis, that it wakes him at night, that it is accompanied by dizziness, weakness and shortness of breath, and that the pain makes him stop what he's doing. He said that the chest pain is precipitated by walking, emotional stress, and standing on his feet too long. He also stated that he has a hard time standing on his feet for very long, because they hurt "constantly." (Tr. 143-144).

In finding that Stallings retained the capability of standing and/or walking for 6 hours of an 8-hour work day, the ALJ pointed to this discrepancy between Stallings' own description of his inability to stand and walk, and the medical records which reflect statements he made to his physicians for purposes of treatment, which indicated no limitations in his capacity to perform physically and resulted in his doctors actually recommending that he increase his exercise regimen. The ALJ further noted that Stallings' reported physical activities, including daily walks and

8

regular use of exercise equipment such as a treadmill, stationary bike and arm-exercising equipment, undermined his credibility with regard to his ability to do light work. The record supports the finding that Stallings pursues a rather vigorous exercise program in his physical therapy sessions, and that he can still mow his lawn, drive, shop, do errands and cook, take care of his personal needs, swim for an hour at a time, and take daily walks to get the mail. (Tr. 20-21, 36-38, 142).

In making a determination of non-disability at step four, the ALJ is required to make detailed findings regarding the claimant's RFC and regarding the physical and mental demands of his past relevant work. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ fulfilled that duty in this case. At the hearing, the ALJ asked Stallings what was entailed in his previous job of building amplifiers. He elicited Stallings' testimony as to the amount of lifting he was required to do in that job, and how much he had to stand and walk during the day. Stallings stated in response that "mainly it was sitting down," but that he did have to walk back and forth at times to speak to his boss. (Tr. 24-26). The ALJ also asked Stallings questions about his current exertional capacity and the effect of his current medical problems on his ability to find and keep a job. (Tr. 26-28). The Court finds that the record supports the ALJ's RFC assessment regarding Stallings' ability to stand and walk at least 6 hours a day and his ability, therefore, to perform light work, such as the electronics assembler position that he previously pursued.[14]

---

[14]The VE testified that the job of electronics assembler is generally considered "light" work, although as Stallings described his past job, it would fall into the "medium" category. (Tr. 47). The ALJ found that the VE described Stallings' amplifier assembler work "as light to medium skilled work." (Tr. 13). However, whether the assembly work is "light" or "medium" is of no consequence in the context of this case, as the measure of ability to stand and walk is not a factor which distinguishes light from medium work. 20 C.F.R. § 416.967(b)-(c), In any event, a claimant will be found "not disabled" if he retains the RFC to perform either the actual functional demands of a particular past relevant job, or the functional

9

B. The ALJ's Credibility Finding

The ALJ's finding that Stallings is capable of standing and/or walking for up to 6 hours a day is based on his related finding that Stallings exaggerates his symptoms and the functional limitations produced thereby, and his conclusion that "[b]ased on the inconsistences among his allegations, statements, testimony, and activities, I find that the claimant's allegations of disabling symptoms and limitations [are] not credible to the degree alleged." (Tr. 12-13).   Stallings challenges this credibility finding.

A claimant alleging disabling pain must present evidence of medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929(a).  There is no question that Stallings has coronary disease, hypertension, and diabetes, and that he suffered a heart attack in 1995.  The issue is whether these conditions could reasonable be expected by produce the symptoms alleged. The ALJ found that, in spite of Stallings' acknowledged physical impairments, he was capable of returning to light work, as his pain and other symptoms did not prevent his lifting the requisite amount and standing and walking for the requisite periods of time.

The Court will generally give deference to the ALJ's conclusions regarding a claimant's credibility and "may not disturb the ALJ's finding when the claimant's complaints of pain are not supported by medical evidence in the record."  Campbell v. Bowen, 822 F.2d 1518, 1522 (10th

---

demands and job duties of the occupation as generally required by employers throughout the national economy. Social Security Ruling 82-61, 1982 WL 31387, at *2; Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1050-51 (10th Cir. 1993).

Cir. 1987), so long as the "[f]indings as to credibility . . . [are] closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). Once the claimant demonstrates an impairment, and at least a loose nexus between the impairment and the pain alleged, the ALJ must consider all the evidence presented that could reasonably produce the pain alleged. Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987).

In this case, the ALJ noted in his opinion Stallings' descriptions of his daily physical activities, as well as his statements to his treating physicians and other medical evidence on the record. (Tr. 12-13). He found that this evidence did not support Stallings' reports of severe restrictions on his ability to stand and walk. When the ALJ questions a claimant's credibility, he must articulate specific reasons for doing so. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). The contradictions in the evidence are described above, and the Court finds that the ALJ's credibility assessment is supported by substantial evidence.

C. Industry Changes.

Stallings argues that the job of electronics assembler has changed significantly since he last performed it, and that therefore he cannot return to his past work because it no longer exists in its previous form. The Court rejects this argument.

> This court has previously held that a claimant could return to her past relevant work, even though her former job was no longer available . . . We looked to whether the claimant could "still do the type of job she did in the past." Id. (noting "a claimant's past work is the 'type' of work previously performed") . . .

Andrade, at 1051.

At the hearing, the vocational expert ("VE") testified that Stallings could return to his past

11

relevant assembly work and added, "I'm also taking note, Your Honor, that he is of advanced vocational age so . . . [is] limited to working in the same industries or using the same tools and procedures that he has done before." (Tr. 48-49). On cross examination, the VE was asked by Stallings' representative whether the job of assembling amplifiers had changed at all since the 1980s. The VE responded, "That particular job would have changed significantly." The VE later clarified this statement, noting that, " . . . the job of electronic assembler I think he could still do. It's just that your amplifiers have changed in what goes into them. So the category of assembler he would still have the capacity to do. But the particular type of amplifier he was changing would not be the same." (Tr. 50-51).

Thus it is apparent that the VE, while acknowledging that amplifiers had changed in the intervening period since Stallings last worked at assembling them, nevertheless testified that Stallings still had the capacity to do the more general job of electronics assembler. (Tr. 48-50). Stallings himself acknowledged that, aside from the ability to lift 50 pounds, there was nothing about the physical requirements of the job of amplifier assembler that he could not do today. (Tr. 26). "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." Social Security Ruling 82-62, 1982 WL 31386, at *3. At step four, the burden is on the claimant to prove that he cannot perform his past relevant work Henrie v. United States Dept. of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993); Andrade, at 1050. The ALJ found that Stallings has not met this burden, and there is substantial support in the record for this finding.

12

## Recommended Disposition

That Stallings' Motion to Reverse and Remand For a Rehearing [Doc. 10] be denied and the case be dismissed.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge

## SOCIAL SECURITY ADMINISTRATION
### Office of Hearings and Appeals

### DECISION

**IN THE CASE OF**                          CLAIM FOR

JAMES M. STALLINGS                         Supplemental Security Income
(Claimant)


                                            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
(Wage Earner)                              (Social Security Number)

### INTRODUCTION

JAMES M. STALLINGS applied for supplemental security income (SSI) on January 21, 1997, alleging disability since November 27, 1994, (exhibit 1D). After the Social Security Administration denied this claim initially and on reconsideration, the claimant filed a hearing request. I held a hearing in this matter on January 20, 1998, in Albuquerque, New Mexico, at which the claimant appeared and testified, accompanied by his representative, Hilda Rojas-Montaño. At my request, William Krieger, Ed.D., appeared and testified as a vocational expert (exhibit 7B).

This decision is UNFAVORABLE to the claimant on all of the issues before me.

### FINDINGS

1. According to his testimony, the claimant has worked as a musician two or three Fridays and Saturdays per month for about $50 per night. I have not determined whether this is substantial gainful activity. Instead I am proceeding with sequential evaluation, and I will use this information as it is relevant to the other issues before me.

2. The claimant has had a "severe" impairment or combination of impairments: coronary artery disease, hypertension, and non insulin dependent diabetes mellitus. These impairments have limited the claimant's exertional ability.

   The claimant has a history of mental disease for which he is currently taking medication. He did not allege a mental impairment as the cause of his disability. Except for

2

medication, he is receiving no other treatment and his mental impairment seems well controlled.  The claimant has alleged no work-related limitations because of a mental impairment.  Therefore, I find that the claimant's mental condition is not a "severe" impairment as defined by the Act.

The claimant is also receiving medication for hyperlipidemia and physical therapy and diet counseling for obesity. Although these conditions are inexorably liked to the claimant's diabetes and heart disease and can exacerbate those illnesses, no separate work-related limitations have been established because of hyperlipidemia and obesity; therefore, I find that they are not impairments within the meaning of the Act.

3.  The claimant has not had any disorder or combination of disorders meeting or equalling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1, Social Security Regulations No. 4.  I compared the claimant's heart disease to Medical Listing 4.04 C. Coronary artery disease.  The listing requires a conclusion by an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, that exercise testing would present a significant risk to the claimant. and both 1 and 2.  1. angiographic evidence revealing a 50 percent or more narrowing of a nonbypassed left main coronary artery, or 70 percent or more narrowing of another nonbypassed coronary artery, or 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery, or 50 percent or more narrowing of at least two nonbypassed coronary arteries, or total obstruction of a bypass graft vessel; and 2. Resulting in marked limitation of physical activity, as demonstrated by fatigue, palpation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest.  Although cardiac catheterization on November 30, 1995, revealed stenosis in a number of coronary arteries, percutaneous transluminal coronary angioplasty was done to the OM1 and the stenosis there was reduced to about 20 percent.  Less than a year later on June 28, 1996, the claimant completed 10:30 minutes of a treadmill exercise test and achieved a 12 METS exertional capacity.  The claimant's physical activity--walking for exercise and working several weekends per month--with only occasional chest pain that is controlled with nitroglycerine, shows no marked limitation of physical activity as required by the Listing.

3

I compared the claimant's diabetes to Listing 9.08 Diabetes
Mellitus.  Although tingling and an occasional burning
sensation in the claimant's feet appear to be early symptoms
of peripheral neuropathy, it falls far short of the Listing
requirement of significant and persistent disorganization of
motor function in two extremities resulting in sustained
disturbance of gross and dexterous movements, or gait and
station.  The record shows no evidence of acidosis occurring
at least on the average of once every 2 months, no
amputation at or above the tarsal region due to diabetic
necrosis or peripheral arterial disease; and no retinitis
proliferans with central visual acuity in the better eye
after best correction at 20/200 or less (Listing 2.02), or
contraction of peripheral visual fields in the better eye to
10 degrees or less from the point of fixation (Listing
2.03A) or so the widest diameter subtends to an angle no
greater than 20 degrees (Listing 2.03B) or to 20 percent or
less of visual field efficiency (Listing 2.03C) or loss of
visual efficiency of the better eye after best correction is
20 percent or less (Listing 2.04).  Based on these facts, I
find that the claimant's impairments do not meet or equal in
severity a Listed impairment.

4.    The claimant has symptom-producing medical problems but
      exaggerates the symptoms and functional limitations produced
      thereby.  Hence, the claimant's testimony does not credibly
      establish symptoms or functional limitations to the extent
      alleged.

      Specifically, the claimant's current work activity and lack
      of compliance with prescribed diet and exercise regimen to
      control obesity, hyperlipidemia, hypertension, and blood
      glucose levels, and his testimony about strength and
      exertional abilities, contradict his allegations of
      functional limitations that prevent him from working.
      The claimant testified that he made one attempt to get a
      telemarketing job, otherwise he has not sought employment or
      assistance of the State employment services.

      The claimant's testimony about pain and limited ability to
      stand and walk, are contradicted by his statements to his
      treating cardiologist, Veena Raizada, M.D., when he told her
      that he only experiences chest discomfort after playing his
      guitar all night.  Dr. Raizada's clinical note on July 1,
      1997, stated that the claimant's coronary artery disease was
      clinically stable, but that his other illnesses--

4

hypertension, hyperlipidemia, diabetes, and obesity--
were not.  Dr. Raizada adjusted the claimant's
medications.  On July 31, 1997, Dr. Raizada arranged
for a doppler examination of the claimant's lower limbs
(exhibit 5F).
When the State disability examiner contacted the claimant on
August 28, 1997, about the results of the doppler
examination, the claimant told him that he was feeling well
except for problems with his feet.  At the hearing the
claimant appeared completely at ease, with no problems
entering, sitting, testifying, or exiting the hearing.

Based on the inconsistencies among his allegations,
statements, testimony, and activities, I find that the
claimant's allegations of disabling symptoms and limitations
not credible to the degree alleged.

5.  The claimant has had a residual functional capacity for at
most light work.  He testified that he could lift up to 50
pounds, but when pressed agreed that his upper limit on a
daily basis was more like 25 to 20 pounds occasionally.  The
claimant testified that he walks daily to the post office,
about 20 to 30 minutes.  He also goes to prescribed physical
therapy twice a week where he walks on a treadmill for 20
minutes, rides a stationary bike for 10 minutes, and uses an
arm-exercising apparatus, similar to a bicycle motion, for
about 10 minutes.  Based on these facts, and recent symptoms
of neuropathy in his feet, I find that the claimant can with
normal breaks stand and walk for up to 6 hours in an 8-hour
workday, sit for up to 6 hours in an 8-hour workday, and
push and pull hand and foot controls within the limits of
his ability to lift and carry.  Because of his foot symptoms
and obesity, I find that the claimant's is limited to
occasional (up to two-thirds of an 8-hour workday) climbing,
balancing, stooping, kneeling, crouching, and crawling.

6.  According to the Dictionary of Occupational Titles (DOT),
4th Edition, Revised 1991, the claimant's past work as a
musician and electronics assembler is light skilled work as
it is done in the national economy.  As described by the
claimant, his job as an amplifier assembler was medium work,
because it required occasional lifting of 50 pound
amplifiers and boxes of parts.  In order to determine
whether the claimant could do his past work, I obtained the
assistance of vocational expert William Krieger, Ed.D. in
making this determination.  I asked Dr. Krieger to evaluate
the claimant's past work as a musician and as an amplifier
assembler.  He described the claimant's work as a musician
as light skilled work and his work as an amplifier assembler
as light to medium skilled work.  He explained that there
were no vocationally relevant transferable skills from the

5

job as a musician, and that because of the claimant's age, his skills as an amplifier assembler were only relevant within the electronics assembly industry. I asked the vocational expert a number of hypothetical questions. The hypothetical question on which I based my decision was: Assume an individual who has the residual functional capacity to occasionally lift and carry 20 pound, frequently; 10 pounds, can stand an walk with normal breaks for up to 6 hours in an 8-hour work day and sit with normal breaks for up to 6 hours in an 8-hour work day, and can occasionally climb, balance, stoop, kneel, crouch, and crawl. The expert testified that such an individual could work as a musician and as an electronic assembler, DOT job number 726.684-018. The expert explained that although the amplifier assembler job required the capacity to lift up to 50 pounds, the tools and procedures used in that job are essentially the same as those described in the light work electronic assembler job in the DOT. He also pointed out that given the claimant's age, his skills would only be applicable within the narrow boundaries of the electronics assembly industry.

The claimant's representative asked the vocational expert whether a similar hypothetical individual who had to take naps several times during the day could do any of the jobs cited by the expert. He replied that such an individual probably would not be employable. However, I reject the need for naps. The claimant testified that he does not sleep well and naps as a result. However, he has not sought treatment for such, nor has he tried not napping.

The representative also asked me to hold the record open, so that she could submit a written argument. I did so, and the argument is in the record as exhibit 11E. I have addressed the representative's arguments that the claimant's impairments meet or equal Listing 4.04 C. and that the claimant's skills are not readily transferable, given his age, education, and work experience. I also note that through the "ability to do past work" step of sequential evaluation, the burden of proof is on the claimant to prove that he cannot. That burden has not been met in the representative's argument.

I find that the claimant's past work does not entail any functional demands beyond those outlined in my residual functional capacity finding above. Hence, the claimant can return to his jobs as a musician and/or electronics assembler, and he is not disabled.

6

7. The claimant was not under a "disability," as defined in the
Social Security Act, at any time through the date of this
decision.

## DECISION

IT IS MY DECISION, based on the application filed on January 21,
1997, that JAMES M. STALLINGS is NOT ENTITLED to supplemental
security income under Section 1614(a)(3) of the Social Security
Act.

GERALD R. COLE
United States
Administrative Law Judge

MAR 2 1 1998
_____
Date